*EXECUTION COPY*

## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** dated this __14th__ day of May, **2018** (the "*Effective Date*") (hereinafter "*Guaranty*"), is executed by and between **SELECT MANAGEMENT RESOURCES, LLC** a Georgia limited liability company whose address is 3440 Preston Ridge Rd., Suite 500, Alpharetta, Georgia 30005 (hereinafter "*Guarantor*") and **MANCHESTER UNITED FOOTBALL CLUB LIMITED**, a company registered in England and Wales (number 95489) whose registered office is Sir Matt Busby Way, Old Trafford, Manchester M16 0RA (hereinafter "*MU*").

### RECITALS

**WHEREAS ADDISON GLOBAL LIMITED**, a company registered in Gibraltar (number 115212) whose registered office is at 57/63 Line Wall Road, Gibraltar (hereinafter "*Addison*") is affiliated with Guarantor through common ownership;

**WHEREAS** Addison has entered into a Global Sponsorship Agreement (Excluding the USA and Hong Kong) with MU dated __May 14, 2018__ (hereinafter the "*Sponsorship Agreement*"), wherein MU granted to Addison the Sponsorship Rights defined in the Sponsorship Agreement in exchange for Addison making the payments to MU, and otherwise performing, pursuant to the Sponsorship Agreement.

**WHEREAS** MU, as a condition of it entering into the Sponsorship Agreement, is requiring that this Guaranty be executed by Guarantor.

**NOW, THEREFORE**, in consideration of the premises recited above and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. Guarantor hereby fully, unconditionally and irrevocably guarantees the timely and complete performance and payment by Addison of all of Addison's obligations under the Sponsorship Agreement, including without limitation all amounts due pursuant to the Financial Provisions contained in Section 7 of the Sponsorship Agreement, but not the obligations excluded in Section 2 of this Guaranty; provided, however, the Guarantor's liability hereunder shall not exceed the obligations of Addison pursuant to the Sponsorship Agreement. The obligations of Guarantor required hereunder shall be referred to as the "*Guaranty Obligations.*"

2. Notwithstanding Section 1 of this Guaranty, under no circumstance shall Guarantor be obligated to undertake or perform: a) the Gambling Services described in Section 4 of the Sponsorship Agreement, or b) any other obligation or service envisaged in the Sponsorship Agreement which requires Guarantor to obtain a gambling license(s) to lawfully undertake or provide; however, for the avoidance of doubt, the Guarantor shall guaranty (and the Guaranty Obligations shall include) any obligation of Addison to pay any amount to MU pursuant to and/or in connection with the Sponsorship Agreement, including as a result of a breach by Addison of Section 4 and/or any other obligation or service envisaged in the Sponsorship Agreement which requires Addison to obtain a gambling license to lawfully undertake or provide).

{6156371: }

3. This is a guaranty of payment and performance and not of collection, and Guarantor unconditionally waives any requirement that MU first make demand upon, or seek to enforce or exhaust remedies against, Addison or any other person (including any other guarantor) before demanding payment from, or seeking to enforce this Guaranty against, Guarantor; provided, that MU shall provide fifteen (15) days prior written notice to Addison of any defaults or breaches under the Sponsorship Agreement prior to enforcing such defaults or breaches pursuant to this Guaranty. This Guaranty shall continue in full force and effect until the fulfillment of, including the payment in full of all outstanding obligations of Addison pursuant to, the Sponsorship Agreement. Guarantor (a) covenants that this Guaranty will not be discharged until the fulfillment of all of the obligations of Addison thereunder; and (b) waives any right to require MU to join Addison with Guarantor in any suit arising under this Guaranty.

4. This Guaranty shall be a continuing guaranty, and shall be binding upon Guarantor, and upon its successors and assigns.

5. Without limiting provisions of Section 3, the obligations or liabilities of Guarantor may, from time to time, in full or in part, be renewed, extended, modified, accelerated, compromised, settled, released or terminated, in each case as provided in the Sponsorship Agreement, without notice to or assent by or any reservation of right against Guarantor, and without in any way affecting or releasing Guarantor from liability under this Guaranty. Failure on the part of MU to require strict performance under the terms of the Sponsorship Agreement will not release a Guarantor from liability under this Guaranty.

6. No delay or omission in exercising any right under this Guaranty shall operate as a waiver of such right or of any other right of MU or any successor thereof, nor shall any delay, omission or waiver on any one occasion be deemed a bar or waiver of the same or any other right on any future occasion.

7. Guarantor reserves to itself all rights and defenses of Addison under the Sponsorship Agreement. Except as provided in Section 3 above, Guarantor expressly waives: (a) any and all notice of acceptance of this Guaranty or of any renewals, extensions, modifications, acceleration, compromise, settlement, release or termination by MU under the Guaranty Obligations; and (b) notice of nonpayment, default, protest, notice of protest and notice of dishonor with respect to the Guaranty Obligations.

8. If Guarantor fails in the due performance of any of its obligations under the terms of this Guaranty, MU will have the right, at its election, to sue for enforcement for such breach and to seek such legal and equitable remedies as may be available to MU, including but not limited to the right to recover its costs of collection, including reasonable attorneys' fees actually incurred. In the event of litigation to enforce the terms of this Guaranty, the substantially losing party agrees to pay the substantially prevailing party's cost and expenses incurred, including, without limitation, reasonable attorneys' fees actually incurred. Nothing herein contained will be construed to restrict or impair the rights of MU to exercise this election. All rights and remedies herein provided or existing at law or in equity will be cumulative of each other and may be enforced concurrently therewith or from time to time.

9. This Guaranty shall inure to the benefit of and be enforceable by MU or any of its successors or assigns. Each reference herein to MU shall be deemed to include its successors and assigns.

10. Guarantor represents and warrants to MU that: (a) neither the execution nor delivery of this Guaranty nor fulfillment of nor compliance with the terms and provisions hereof will conflict with, or result in a breach of the terms or conditions of, or constitute a default under, any material agreement or instrument to which Guarantor is now a party or by which Guarantor may be bound, or result in the creation of any lien, charge or encumbrance upon any property or assets of Guarantor, which conflict, breach, default, lien, charge or encumbrance could result in a material adverse change in the financial condition of Guarantor; (b) no further consents, approvals or authorizations are required for the execution and delivery of this Guaranty by Guarantor or for Guarantor's compliance with the terms and provisions of this Guaranty, or if such consent, approval or authorization is required, such consent, approval or authorization has been obtained; (c) this Guaranty is the legal, valid and binding agreement of Guarantor and is enforceable against Guarantor in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, liquidation, reorganization and other laws affecting the rights of creditors generally and subject to general principles of equity; (d) Guarantor has the full power, authority, capacity and legal right to execute and deliver this Guaranty, and, to the extent Guarantor is a limited liability company or other form of entity, the parties executing this Guaranty on behalf of Guarantor are fully authorized and directed to execute the same to bind Guarantor; (e) Guarantor is not, and if Guarantor is a "disregarded entity," any owner of the disregarded entity is not, a "nonresident alien," "foreign corporation," "foreign partnership," "foreign trust," "foreign estate," or any other "person" that is not a "United States person," as those terms are defined in the U.S. Internal Revenue Code and the regulations promulgated thereunder; (f) to the best of Guarantor's knowledge, there is no action, suit or proceeding pending or, to Guarantor's knowledge, threatened against or affecting Guarantor, at law or in equity, or before or by any governmental authority, which might result in any materially adverse change in Guarantor's business or financial condition; (g) Guarantor expects to receive substantial benefits from Addison's financial success and Guarantor is receiving a material benefit from the execution and delivery of the Sponsorship Agreement; (h) Guarantor is familiar with, and has independently reviewed the books and records regarding, the financial condition of Addison; however, Guarantor is not relying on such financial condition as an inducement to enter into this Guaranty; and (i) neither MU nor any other party has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty. Guarantor understands that MU is relying on the representations and warranties of Guarantor, and Guarantor represents that such reliance is reasonable.

11. Guarantor shall not, without the prior written consent of MU, which consent shall not be unreasonably withheld or delayed, assign or transfer this Guaranty or any estate or interest herein. Guarantor shall not, without the prior written consent of MU, engage in any of the following actions if such action(s) would have a material adverse impact on Guarantor's ability to meet its obligations under this Guaranty: (i) if Guarantor is an entity other than a corporation whose stock is publicly traded, permit the transfer of an ownership interest in Guarantor so as to result in a change in the current direct or indirect control of Guarantor, (ii) transfer or dispose of any material part of Guarantor's assets except in the ordinary course of business for full and fair consideration and reasonably equivalent value or (iii) enter into any merger, consolidation, or

{6156371: }

other reorganization unless the Guarantor is the survivor. If Guarantor violates the restrictions herein or otherwise defaults under this Guaranty, MU shall have all available remedies at law and in equity against Guarantor and, without limiting the generality of the foregoing, such violation by Guarantor shall constitute a material breach under the Sponsorship Agreement.

12. This Guaranty shall remain in full force and effect and continue to be effective upon the bankruptcy of or other insolvency event with respect to Guarantor. This Guaranty shall continue to be effective or be reinstated, as applicable, if at any time payment and performance of the Guaranty Obligations, or any part thereof, are, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by MU, whether as a "voidable preference," "fraudulent conveyance" or otherwise, all as though such payment or performance had not been made. In the event that any payment of the Guaranty Obligations, or any part thereof, is rescinded, reduced, restored or returned, the Guaranty Obligations shall be reinstated and deemed reduced only by such amount paid to MU and not so rescinded, reduced, restored or returned. If Addison, or Addison's trustee, receiver or other officer with similar powers with respect to Addison, rejects, disaffirms or otherwise terminates the Sponsorship Agreement pursuant to any bankruptcy, insolvency, reorganization, moratorium or any other law affecting creditors' rights generally, Guarantor shall nonetheless remain obligated to pay all sums payable and/or due pursuant to the Sponsorship Agreement, and to perform all covenants required to be performed by Addison under the Sponsorship Agreement, as if such rejection, disaffirmance or other termination of the Sponsorship Agreement had never occurred and as if the Sponsorship Agreement (without taking into account such rejection, disaffirmance or termination) were in full force and effect, notwithstanding the fact that: (a) MU may not be able to recover any part or all of such sums due pursuant to the Sponsorship Agreement from Addison; or (b) Addison's obligations to pay sums due pursuant to the Sponsorship Agreement, or to perform obligations pursuant to the Sponsorship Agreement, may be limited by application of such bankruptcy, insolvency, reorganization, moratorium or other law affecting creditors' rights generally.

13. Notwithstanding any other provisions herein contained, no provision of this Guaranty shall require or permit the collection from Guarantor of interest in excess of the maximum rate or amount that Guarantor may be required or permitted to pay to MU pursuant to applicable law and as to which Guarantor could successfully assert the claim or defense of usury.

14. **WAIVER OF JURY TRIAL**. TO THE MAXIMUM EXTENT PERMITTED BY LAW, MU, BY ACCEPTING THIS GUARANTY, AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY AND ALL ISSUES PRESENTED IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY MU OR GUARANTOR AGAINST ANY PARTY OR THEIR SUCCESSORS WITH RESPECT TO ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY, THE RELATIONSHIP OF MU, ADDISON AND/OR GUARANTOR, AND/OR ANY CLAIM FOR INJURY OR DAMAGE, OR ANY EMERGENCY OR STATUTORY REMEDY. THIS WAIVER BY MU AND GUARANTOR OF ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY HAS BEEN NEGOTIATED AND IS A MATERIAL INDUCEMENT FOR MU ACCEPTING THIS GUARANTY. FURTHERMORE, MU, BY ACCEPTING THIS GUARANTY, AND GUARANTOR HEREBY KNOWINGLY,

VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT THEY MAY HAVE TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES FROM THE OTHER OR ANY OF THEIR AFFILIATES, OFFICERS, DIRECTORS, MANAGERS OR EMPLOYEES OR ANY OF THEIR SUCCESSORS WITH RESPECT TO ANY AND ALL ISSUES PRESENTED IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY OR ANY OF THEIR AFFILIATES, OFFICERS, DIRECTORS, MANAGERS OR EMPLOYEES OR ANY OF THEIR SUCCESSORS WITH RESPECT TO ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY OR ANY DOCUMENTS CONTEMPLATED HEREIN OR RELATED HERETO. THE WAIVER BY MU AND GUARANTOR OF ANY RIGHT THEY MAY HAVE TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES HAS BEEN NEGOTIATED AND IS AN ESSENTIAL ASPECT OF THEIR BARGAIN. THIS WAIVER SURVIVES THE EXPIRATION OR TERMINATION OF THE LEASE AND THIS GUARANTY.

15. This Guaranty shall be construed and enforced in accordance with and governed by the laws of the State of Georgia. Each party hereto irrevocably consents to the exclusive jurisdiction of the courts of the State of Georgia and the United States federal courts situated in Fulton County in the State of Georgia in connection with any action to enforce the provisions of this Guaranty. Guarantor agrees not to bring any action or proceeding arising out of or relating to this Guaranty in any other court. Guarantor waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety, or other security that might be required of MU with respect thereto.

16. All understandings, representations and agreements heretofore had with respect to this Guaranty are merged into this Guaranty which alone fully and completely expresses the agreement of Guarantor and MU.

17. This Guaranty may be executed in counterparts, each of which may be delivered by facsimile or other electronic means, and all of which together shall constitute a single agreement.

**[SIGNATURE PAGE FOLLOWS]**

{6156371: }

Accepted and agreed as of the Effective Date:

SELECT MANAGEMENT RESOURCES, LLC

By: _/s/ Rod Aycox_

Name: Rod Aycox

Title: Managing Member & CEO

MANCHESTER UNITED FOOTBALL CLUB LIMITED

By: _/s/ Richard Arnold_

Name: Richard Arnold

Title: MP

[SIGNATURE PAGE TO GUARANTY AGREEMENT]

{6156371: }